United States District Court
Southern District of Texas

**ENTERED**

March 01, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN POLASEK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-1695 |
| | § | |
| JPMORGAN CHASE BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM and RECOMMENDATION

Pending before the court[1] is Defendant's Motion for Summary Judgment (Doc. 32). The court has considered the motion, the responses filed thereto, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED**.

### I.  Case Background

Plaintiff John Polasek ("Plaintiff") filed this action against JPMorgan Chase Bank ("JPMorgan"), alleging three causes of action: (1) discrimination in violation of the Age Discrimination in Employment Act ("ADEA")[2]; (2) quantum meruit; and (3) promissory estoppel.

### A.  Factual History

On April 23, 2008, in a written letter, JPMorgan offered Plaintiff a position as Executive Director in its Global

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 16.

[2]     29 U.S.C. § 621 et seq.

Commodities Division, which Plaintiff accepted.[3]   This offer followed the merger of JPMorgan with the Bear Stearns Companies, Inc., where Plaintiff was employed at the time of the merger.[4]   At Bear Stearns, Plaintiff reported to Claude Guinchard ("Guinchard"), and Guinchard recruited Plaintiff to JPMorgan after the merger.[5]

Within the commodities market, Plaintiff specialized in the niche market of weather deals.[6]   Plaintiff's starting base salary at JPMorgan was $175,000, and he was eligible to participate in an annual, performance-based incentive plan.[7]   Plaintiff's employment at JPMorgan was at-will, and the offer letter explicitly stated that Plaintiff or JPMorgan had the right to terminate the employment at any time and for any reason.[8]

At JPMorgan, Plaintiff reported directly to Guinchard, Managing Director of Americas Structuring.[9]   Guinchard was

---

[3]   See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def's. Mot. for Summ. J., Pl.'s Dep. pp. 39, 41.

[4]   See Doc. 32-2, Ex. A-1 to Def's Mot. for Summ. J., Offer Letter;  Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def's. Mot. for Summ. J., Pl.'s Dep. pp. 11, 41.

[5]   See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 14, 41.

[6]   See id. p. 32.

[7]   See Doc. 32-2, Ex. A-1 to Def.'s Mot. for Summ. J., Offer Letter.

[8]   See id.

[9]   See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 41.  Guichard worked out of the New York office.  Id. p. 32.

supervised by Alex Lesin ("Lesin"), Managing Director of Global Structuring, and Lesin was supervised by Roy Salame ("Salame"), Managing Director of Global Origination.[10]   Plaintiff also had indirect interaction with the teams of Paul Posoli ("Posoli"), Managing Director of Global Commodities and Global Trading and Michael Bertuccio ("Bertuccio") Managing Director, Structured Oil.[11] Bertuccio reported to Chris Neidow, who in turn reported to Salame.[12]   Despite a close working relationship with Bertuccio, Plaintiff did not report to him.[13]   Plaintiff had the same type of indirect reporting relationship with Posoli.[14]   In the JPMorgan hierarchy, Posoli was on the same level as Salame.[15]

Plaintiff was thirty-nine years old when he began his employment with JPMorgan.[16] Guinchard was forty-eight years old; Lesin was forty-three years old; and Salame was forty-seven years

---

[10]    See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 14-16.

[11]    See Doc. 36, Ex. B to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Bertuccio's Dep. p. 29;  See Doc. 36, Ex. E to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Posoli's Dep. pp. 18-19; Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 14-16, 204-205, 349-50.

[12]    See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 203-4.

[13]    See id. p. 204.

[14]    See id. p. 86.

[15]    See id. p. 87.

[16]    See id. p. 11.

3

old.[17] Weiming Yang ("Yang") was also a member of the structuring team in Houston and was forty-two years old.[18] In other words, Plaintiff was the youngest member of the team.

The purpose of the annual, performance-based incentive award (the "bonus" or "plan") was to attract, motivate, and retain employees.[19] The plan was administered by JPMorgan, which: (1) determined whether bonus funding would be authorized for a particular year; (2) selected employees eligible for bonuses; (3) established individual performance criteria; and (4) established the terms and conditions of bonuses, including the amount of any bonus.[20]

According to the plan, the grant of a bonus was solely in the discretion of JPMorgan and did not alter the at-will employment relationship with employees.[21] In determining whether a bonus would be awarded to an employee, the managing business unit measured the employee's contributions to the employing business unit in the areas of profitability; investing for growth; executing major projects; managing people; developing talent; operating with

---

[17] See Doc. 32-3, Ex. B-1 to Def.'s Mot. for Summ. J., Personnel Records.

[18] See id.

[19] See Doc. 32-3, Ex. A-2 to Def.'s Mot. for Summ. J., Performance-Based Compensation Plan.

[20] See id.

[21] See id.

integrity; and other criteria, such as skill in complex work assignments, performance reviews, revenue generation, and subjective performance-based criteria.[22] The performance evaluations occurred at the end of the performance year and the managing business unit determined the amount of each individual bonus shortly thereafter.[23]

The plan specified the payment or distribution of the bonus in the calendar year following the performance year, provided that no award would be made to an employee if not employed with JPMorgan on the payment date.[24] All bonuses were reflected in written agreements signed by an authorized JPMorgan officer.[25] Per the terms of the plan, no employees or officers of JPMorgan were authorized to make oral promises or representations about bonuses.[26]

According to Plaintiff, approximately eight to twelve weeks before Plaintiff's performance evaluation for 2011, he provided Guinchard with written and oral information regarding his contributions to various deals.[27] Plaintiff stated that minutes before the performance evaluation meeting, Guinchard called

---

[22]  See id.

[23]  See id.

[24]  See id.

[25]  See id.

[26]  See id.

[27]  See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 164.

5

Plaintiff to ask for a list of Plaintiff's deals because he had misplaced the one previously supplied.[28]   Plaintiff was away from his computer, and Guinchard requested brief summaries of Plaintiff's contributions, stating that "the rest of it should take care of itself at the meeting."[29]

Plaintiff was given an "Action Needed" rating for his employment performance for calendar year 2011.[30]   "Action Needed" was the lowest performance ranking possible for an Executive Director at JPMorgan.[31]   Posoli and Bertuccio were not involved in this performance review.[32]

JPMorgan later awarded Plaintiff a bonus of approximately $25,000, comprised of a $22,500 discretionary cash bonus and a $2,250 discretionary stock award for the 2011 year.[33] By contrast, Plaintiff had received a bonus in the amount of $213,750 for 2010,

---

[28]     See id. p. 163.

[29]     See id. p. 163-64.

[30]     See Doc. 32-3, Ex. B to Def.'s Mot. for Summ. J., Decl. of Silverman ¶ 6.

[31]     See id.

[32]     See Doc. 36, Ex. B to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Bertuccio's Dep. p. 61; Doc. 36, Ex. E to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Posoli's Dep. p. 37. At his deposition, Plaintiff stated that he was under the impression that Bertuccio and Posoli were at a meeting where executive directors such as himself were ranked but admitted he did not know who attended the meeting. See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 160.

[33]     See Doc. 32-3, Ex. B to Def.'s Mot. for Summ. J., Decl. of Silverman ¶ 6.

6

and $300,000 for the year before that.[34]

In early 2012, Plaintiff spoke with Guinchard about his performance rating and bonus.[35]  Guinchard and Plaintiff discussed how Plaintiff should better allocate his time in 2012 and that Plaintiff should not solely focus on weather deals because it was not a "core business."[36]

Plaintiff, unhappy with his bonus, spoke with Posoli and Bertuccio.  In January 2012, Posoli, the senior director of the Houston office, told Plaintiff that he was confident that a mistake had been made with regard to Plaintiff's 2011 bonus.[37]  Plaintiff recalled that Posoli stated that he had spoken with Lesin, Mike Camacho, and Salame, who all concurred that Plaintiff's bonus was mistakenly low and were apologetic.[38]  Posoli asked Plaintiff how much JPMorgan would need to pay to keep Plaintiff happy, and

---

[34]    See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 46, 50.

[35]    See id. p. 158.

[36]    See id.

[37]    See Doc. 36, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., p. 17; Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 77, 79, 85; Doc. 36, Ex. E to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Posoli's Dep. pp. 18-19.  Posoli did not know his level with regard to the entire JPMorgan hierarchy, but Posoli stated that he did not report to anyone in the Houston office. Id. p. 27.

[38]    See Doc. 36, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., p. 17; Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 77.

Plaintiff answered between $100,000 and $150,000.[39]   Plaintiff stated that Posoli agreed that JPMorgan "owed" Plaintiff that amount.[40]  According to Plaintiff, Posoli agreed that Plaintiff was owed this amount "four or five" more times in phone conversations after Plaintiff was terminated.[41]  Posoli has denied making these statements or having these conversations with Plaintiff.[42]

Plaintiff testified that Bertuccio also believed that Plaintiff's 2011 bonus was inadequate.[43]  According to Plaintiff, Bertuccio promised that if Plaintiff participated with his team and delivered value in 2012, Bertuccio would ensure that Plaintiff, as a member of his team, "got paid."[44]  Bertuccio denies making this statement to Plaintiff.[45]   Plaintiff did not secure written agreements with Bertuccio or Posoli regarding make-up or future

---

[39]    See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 78.

[40]    See id. p. 77.

[41]    See id. p. 84.

[42]    See Doc. 36, Ex. E to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Posoli's Dep. pp. 65, 76.

[43]    See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 82.

[44]    See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 82.

[45]    See Doc. 36, Ex. B to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Bertuccio's Dep. p. 88.

bonuses.[46]   Plaintiff did not speak to Lesin, Mike Camacho, or Salame about his 2011 bonus.[47]

Plaintiff stated that in 2012, his effort and work performance were in reliance on the communications with Posoli and Bertuccio.[48] According to Plaintiff, he "continued working very hard at JPMorgan with a smile on [his] face and added lots of value in 2012."[49] Plaintiff stated that he was extremely focused on doing deals, and working with Bertuccio.[50]   Plaintiff stated that he refrained from quitting his job at JPMorgan based on Bertuccio and Posoli's assurances of a bonus.[51]   Plaintiff did not interview with other firms or receive any job offers while employed at JPMorgan in 2012.[52]   Plaintiff continued to receive his $275,000 annual salary throughout 2012.[53]

In June or July 2012, Plaintiff had a mid-year performance

---

[46]   See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 88-89.

[47]   See id. pp. 81, 85.

[48]   See id. p. 136.

[49]   See id. p. 137.

[50]   See id. p. 138.

[51]   See Doc. 36, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., p. 19.

[52]   See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 44.

[53]   See id. p. 141.

review with Guinchard and Bertuccio.[54]   According to Plaintiff, Guinchard and Bertuccio felt that Plaintiff was doing a great job.[55]

In early November 2012, Plaintiff received a call from Lesin.[56] Lesin informed Plaintiff that Plaintiff was being terminated from JPMorgan.[57]   Plaintiff was shocked because an important deal had recently closed and Plaintiff believed that he was having a strong year.[58]   On November 6, 2012, JPMorgan sent Plaintiff a letter to confirm that his position was eliminated and his employment was terminated effective December 20, 2012.[59] The letter indicated that Plaintiff was eligible for a severance package of approximately $95,000 in cash and $125,000 in stock if he did not secure another position within JPMorgan by December 20, 2012.[60]

Plaintiff's eligibility for severance pay was conditioned on executing a release agreement.[61]   The release agreement would have

---

[54]   See id. p. 170.

[55]   See id.

[56]   See id. p. 177.

[57]   See id. p. 176.

[58]   See id. pp. 177-78.

[59]   See Doc. 32-2, Ex. A-6 to Def.'s Mot. for Summ. J., Termination Letter, p. 1.

[60]   See Doc. 32-2, Ex. A-6 to Def.'s Mot. for Summ. J., Termination Letter, p. 1; Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 182-83.

[61]   See Doc. 32-2, Ex. A-6 to Def.'s Mot. for Summ. J., Termination Letter, p. 1; Release Agreement, p. 4.

released JPMorgan from liability for "any claims or potential claims relating to [Plaintiff's] employment with the Company and/or termination from [Plaintiff's] employment," including claims under the ADEA.[62]   Plaintiff declined to sign the release agreement.[63]

In December 2012, Plaintiff called Bertuccio to discuss his termination.[64]   According to Plaintiff, Bertuccio stated that he believed that JPMorgan wanted to acquire cheaper talent and that Plaintiff's termination was due to his age.[65]   Plaintiff did not know the basis for Bertuccio's statement and conceded that Bertuccio never stated that he was involved in the decision to terminate Plaintiff.[66]   Plaintiff did not know who was involved in the termination decision.[67]   Plaintiff later sent Bertuccio an email thanking him for sharing his opinion.[68]   Bertuccio did not respond

---

[62]   See id. p. 4.

[63]   See Doc. 32-3, Ex. B to Def.'s Mot. for Summ. J., Decl. of Jennifer Silverman ¶ 7.

[64]   See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 198.

[65]   See Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 11 ("[T]hey let me go, and Michael Bertuccio made a statement to me that while I was an exceptional employee, that the only reason he could see that I was let go was based on my age and their desire to hire younger people, which he didn't think that they could – they could do successfully, because my value was too great.")

[66]   See id. pp. 13, 200.

[67]   See id. p. 195.

[68]   See id. p. 201.

to Plaintiff's email.[69]  At his deposition, Bertuccio stated that he did not think that Plaintiff was terminated due to his age.[70]

Plaintiff was not replaced by any new employee at JPMorgan.[71] JPMorgan did not hire any Executive Directors in Structuring in Houston after Plaintiff's November 2012 termination.[72]  In October 2014, JPMorgan sold its Commodities division.[73]

## B.  **Procedural History**

Plaintiff filed this action against Defendant on June 17, 2014.[74]  Defendant answered on September 15, 2014.[75]  On December 5, 2014, Plaintiff filed an amended complaint, and Defendant answered the amended complaint on December 17, 2015.[76]

On August 28, 2015, Defendant filed the pending motion for summary judgment; Plaintiff responded on September 21, 2015.[77]

---

[69]   See Doc. 36, Ex. B to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Bertuccio's Dep. p. 122.

[70]   See id. p. 101.

[71]   See Doc. 32-3, Ex. B to Def.'s Mot. for Summ. J., Decl. of Silverman ¶ 3.

[72]   See id. ¶ 7.

[73]   See id.

[74]   See Doc. 1, Pl.'s Orig. Compl.

[75]   See Doc. 4, Def.'s Ans.

[76]   See Doc. 10, Pl.'s 1st Am. Compl; Doc. 11, Def.'s Ans. to Pl.'s 1st Am. Compl.

[77]   See Doc. 32, Def.'s Mot. for Summ. J.; Doc. 36, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J.

Defendant filed a reply in support of its motion for summary judgment on September 25, 2015.[78]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which

---

[78]     See Doc. 37, Def.'s Reply in Support of Mot. for Summ. J.

the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of

14

an element essential to that party's case, and on which that party
will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S.
at 322.

### III.  Analysis

Defendant moves for summary judgment on all of Plaintiff's
causes of action: (1) age discrimination under the ADEA; (2)
quantum meruit; and (3) promissory estoppel.  The court considers
the merits of Defendant's motion in turn.

### A.  Discrimination Under the ADEA

The ADEA makes it "unlawful for an employer . . . to discharge
any individual . . . because of such individual's age." 29 U.S.C.
§ 623(a)(1).  In employment discrimination cases, a plaintiff may
present his case by direct or circumstantial evidence, or both.
<u>Sandstad v. CB Richard Ellis, Inc.</u>, 309 F.3d 893, 896 (5th Cir.
2002)(citing <u>Russell v. McKinney Hosp. Venture</u>, 235 F.3d 219, 222
(5th Cir. 2000)).  When a plaintiff presents credible, direct
evidence that discriminatory animus was a substantial factor in the
contested employment action, the burden of proof shifts to the
defendant to establish by a preponderance of the evidence that,
regardless of the forbidden factor, the defendant would have taken
the same action. <u>Brown v. E. Miss. Elec. Power Ass'n.</u>, 989 F.2d
858, 961 (5th Cir. 1993).

In the absence of direct evidence of age discrimination, the
Fifth Circuit analyzes ADEA claims under the modified burden-

shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Moss v. BMC Software, Inc.</u>, 610 F.3d 917, 922 (5th Cir. 2010)(quoting <u>Berquist v. Wash. Mut. Bank</u>, 500 F.3d 344, 349 (5th Cir. 2007)); <u>see also</u> <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003) (modifying <u>McDonnell Douglas</u>, 411 U.S. 792); <u>but see</u> <u>Gross v. Fin. Servs., Inc.</u>, 557 U.S. 167, 174, 175 n.2 (noting, in dicta, that the U.S. Supreme Court had never decided whether the burden-shifting framework applies to ADEA claims and declining to do so in that case).

Under this approach, a plaintiff may trigger a presumption of discrimination by establishing a prima facie case. <u>Jackson v. Cal-W. Packaging Corp.</u>, 602 F.3d 374, 378 (5th Cir. 2010). To establish a prima facie case of discrimination under the ADEA, a plaintiff must show that he: (1) was terminated; (2) was qualified for his position; (3) belonged to the protected group of persons over the age of forty, and (4) was replaced by someone younger or outside the protected group or was otherwise discharged because of his age. <u>Id.</u> (quoting <u>Berquist</u>, 500 F.3d at 349); <u>see also</u> 29 U.S.C. § 631 (applying the ADEA only to individuals at least forty years old).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its adverse employment action. <u>Moss</u>, 610 F.3d at 922 (quoting <u>Berquist</u>, 500 F.3d at 349). If the defendant satisfies this burden, the plaintiff must "rebut the

employer's purported explanation, to show that the reason given is merely pretextual." Id. (citing Jackson, 602 F.3d at 378-79).  The ultimate burden of proving intentional discrimination remains at all times with the plaintiff. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S.248, 253 (1981).  In order to prevail on an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross, 557 U.S. at 177-78.

## 1.  **Direct Evidence of Discrimination**

In the employment discrimination context, direct evidence is evidence, which if believed, proves the fact without inference or presumption.  Brown, 989 F.2d at 861 (finding that a supervisor's open and routine use of racial slurs constituted direct evidence that racial animus was a motivating factor in employment decisions).

Plaintiff states that he has presented direct evidence which shows that Plaintiff's age was the motivating factor in his termination from JPMorgan through the comment attributed to Bertuccio by Plaintiff was that "the only reason [Bertuccio] could see that [Plaintiff] was let go was based on [Plaintiff's] age and [JPMorgan's] desire to hire younger people."[79]  However, the court

---

[79]   See Doc. 36, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. p. 4;  Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 11.

cannot consider this statement as direct evidence of discrimination because it is speculative and not admissible as an exception to the hearsay rule.

Plaintiff has raised no fact issue that Bertuccio's opinion was made within the scope of his duties with JPMorgan because there is no suggestion in the record that Bertuccio had any involvement in the decision to terminate Plaintiff or that he was told of the basis for the decision by the decision-makers. See Ward v. Jackson State Univ., 602 F. App'x 1000, 1004 (5th Cir. 2015) ("To determine if a statement falls within the scope of employment, we examine whether the statement relates to the employee's duties."). It is undisputed that the statement was made during a phone call after Plaintiff was terminated. See Fairchild v. All Am. Check Cashing, Inc., No. 15-60190 (5th Cir. Jan. 27, 2016) (slip copy) (holding that an out-of-court statement made during a social occasion was not subject to the party-opponent exception provided for in Federal Rule of Evidence 801(d)(2)).

Remarks made by co-workers who are uninvolved in the termination decision do not directly demonstrate a discriminatory animus. Sandstad, 309 F.3d at 898. A statement made by a colleague who was not involved in the termination decision, cannot directly demonstrate that Plaintiff was fired because of his age. Reading the evidence in the light most favorable to Plaintiff, the court finds that Plaintiff has not presented admissible direct

18

evidence of age discrimination.

## 2.    **Indirect Evidence of Discrimination - Prima Facie Case**

Defendant does not challenge Plaintiff's ability to satisfy the first three elements of a prima facie case. Rather, Defendant contends that Plaintiff has failed to satisfy the final element of a prima facie case, namely, that he was terminated because of his age.[80]

Here, Plaintiff asserts Bertuccio's comment establishes that Plaintiff was terminated because of his age and JPMorgan's desire to hire younger talent.  Per Plaintiff, this comment should be given greater weight by virtue of Bertuccio's position within JPMorgan as a Managing Director.  As discussed above, the court finds that Bertuccio's statement is inadmissible.  However, assuming for the sake of argument that it may be admissible, the court considers whether it is some evidence of a discriminatory animus.

Generally, stray remarks are not sufficient evidence of discrimination. See Krystek v. Univ. of S. Miss., 164 F.3d 251, 256 (5th Cir. 1999).  The value of the remarks is dependent upon the content of the remarks and the speaker. Russell, 235 F.3d at 225. Such remarks may serve as sufficient evidence of age discrimination if the offered comments are: (1) age related; (2) proximate in time to the terminations; (3) made by an individual with authority over

---

[80]    See Doc. 32, Def.'s Mot. for Summ. J. p. 1.

the employment decision at issue; and (4) related to the employment decision at issue. <u>Brown v. CSC Logic, Inc.</u>, 82 F.3d 651, 655 (5th Cir. 1996). Comments that are vague and remote in time are insufficient to establish discrimination, while specific comments made over a lengthy period of time are sufficient. <u>Id.</u> at 655-56. An isolated comment made by someone with no connection to an employee's performance evaluation or eventual termination does not have evidentiary force. <u>Travis v. Bd. of Regents of the Univ. of Tex. Sys.</u>, 122 F.3d 259, 264 (5th Cir. 1997). Furthermore, unless there is evidence that the speaker had leverage or influence over the decision maker, the comment cannot be imputed to the decision maker. <u>Russell</u>, 235 F.3d at 226.

Here, the court finds that Bertuccio's comment is a stray remark and is thus insufficient evidence of discrimination. Bertuccio allegedly made this isolated comment in response to a phone call by Plaintiff the month after Plaintiff's termination. Bertuccio's comment is speculative as it communicates Bertuccio's belief that JPMorgan sought to hire younger, cheaper talent. The bottom line is that Plaintiff has no evidence establishing the factual basis for Bertuccio's opinion that connects to a discriminatory animus held by a decision maker. Bertuccio was not involved in the decision regarding Plaintiff's termination. Per Salame, who made the decision to terminate Plaintiff, Bertuccio was not consulted regarding the termination and therefore had no

personal knowledge of the basis for that decision.[81]  There is no evidence that Bertuccio had any leverage or influence over Salame or participated in the decision to terminate Plaintiff.  Therefore, Bertuccio's opinion cannot be imputed to Salame, the actual decision maker.  Plaintiff has failed to raise a prima facie case of age discrimination.  Nonetheless, the court proceeds to consider the remaining McDonnell Douglas Corp. factors.

### 3. Legitimate, Nondiscriminatory Reason

Assuming, ad arguendo, that Plaintiff satisfied the elements of a prima facie case, the court turns to Defendant's articulated legitimate, nondiscriminatory reason for terminating Plaintiff. See Moss, 610 F.3d at 922 (quoting Berquist, 500 F.3d at 349).  In this case, Defendant asserts that the decision to terminate Plaintiff was prompted by JPMorgan's need to "right size itself and . . . reduce a high expense base in a changing and dynamic market."[82]  Specifically, Salame avers that he decided to terminate Plaintiff because Plaintiff's position was the most easily eliminated by redistributing his responsibilities to others on the structuring team.[83]  Salame consulted with Guinchard, Lesin, and

---

[81]  See Doc. 32, Ex. C to Def.'s Mot. for Summ. J., Decl. of Salame ¶ 7.

[82]  See Doc. 32, Ex. C to Def.'s Mot. for Summ. J., Decl. of Salame ¶ 4.

[83]  See id.

Camacho in reaching this conclusion.[84]   Salame did not discuss the termination with Bertuccio.[85]  In making this decision, Salame noted that Plaintiff was the lowest-rated member of Guinchard's team, having received a "Needs Improvement" rating in 2011.[86] Furthermore, Plaintiff was a weather specialist, which was not actively marketed by JPMorgan's sales organization and did not generate adequate returns to cover the overhead costs.[87]  Plaintiff was not replaced by another employee, and his division was eventually sold to another company.[88]

Defendant has thus satisfied its burden of showing a legitimate, nondiscriminatory reason for its conduct.  The court therefore proceeds to the next stage of the McDonnell Douglas burden-shifting scheme.

---

[84]   See id. ¶ 3.  The court also notes that Salame, Guinchard, and Lesin are older than Plaintiff, giving rise to inferences of non-discriminatory intent. See Reeves v. Sanderson Plumbing Prods., Inc., 197 F.3d 688, 694 (5th Cir. 1999). Furthermore, Guinchard was involved in Plaintiff's hiring and firing, giving rise to the inference that age discrimination was not the motive behind Plaintiff's termination. See Brown, 82 F.3d at 658.  Finally, the court also notes that Yang, an Executive Director on the Houston structuring team who is older than Plaintiff, was not terminated at the time of Plaintiff's termination.

[85]   See Doc. 32, Ex. C to Def.'s Mot. for Summ. J., Decl. of Salame ¶ 7.

[86]   See id. ¶ 4.

[87]   See id.

[88]   See Doc. 32, Ex. B to Def.'s Mot. for Summ. J., Decl. of Silverman ¶ 7.

### 4. **Pretext**

To overcome Defendant's motion for summary judgment on his ADEA claim, Plaintiff must produce some evidence demonstrating that Defendant's nondiscriminatory reason for terminating him is mere pretext. Moss, 610 F.3d at 922 (quoting Berquist, 500 F.3d at 349). Plaintiff may attempt to establish that he was the victim of intentional age discrimination "by showing that [JPMorgan's] proffered explanation is unworthy of credence." See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143 (2000).

Plaintiff concedes that Defendant has met its burden of producing a legitimate, non-discriminatory reason for terminating Plaintiff's employment.[89]  Plaintiff asserts that Bertuccio's comment is probative evidence that Defendant's stated reason for terminating Plaintiff is mere pretext designed to conceal an unlawful motive.  However, as discussed above, Bertuccio's statement is not admissible and cannot raise a fact issue of pretext. The court finds that Plaintiff cannot rebut Defendant's legitimate and non-discriminatory reason for the termination, and accordingly **RECOMMENDS** that Defendant's motion be **GRANTED** as to Plaintiff's ADEA claim.

### B. **Quantum Meruit**

Defendant additionally moves for summary judgment on

---

[89]  See Doc. 36, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., p. 14.

Plaintiff's quantum meruit claim.  Quantum meruit is an equitable remedy that "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted."  Sullivan v. Leor Energy, LLC, 600 F.3d 542, 550 (5th Cir. 2010); In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 740 (Tex. 2005) (quoting Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990)).  The claim is independent of and does not arise out of a contract.  Sullivan, 600 F.3d at 550.  A party may recover in quantum meruit when nonpayment for the services the party rendered would "result in an unjust enrichment to the party benefitted by the work."  Id. (quoting Vort, 787 S.W.2d at 944).

To recover under quantum meruit, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.  Vort, 787 S.W.2d at 944.  However, a party may recover under quantum meruit only where there is no express contract covering the services for which compensation is sought. MetroplexCore, L.L.C. v. Parsons Transp., Inc., 743 F.3d 964, 975 (5th Cir. 2014); Murray v. Crest Constr., Inc., 900 S.W.2d 342, 345 (Tex. 1995).

In this case, Plaintiff asserts a quantum meruit cause of action based on the added value of services rendered by him during the 2012 calendar year.  Plaintiff argues that his extra effort entitled him to a bonus and stock shares that were due to vest shortly before his termination.  Defendant notes in response that Plaintiff was compensated through an employment contract and that quantum meruit therefore cannot apply.  Plaintiff counters that Defendant's offer letter did not explain what services were covered by the contract or that such services to be rendered were ambiguous.

Plaintiff is correct that his offer letter does not expressly outline the services he was to provide to Defendant.  However, Plaintiff's claims are not based on the ambiguity of his employment contract as the parties do not dispute that a valid employment contract existed and that Plaintiff was compensated for his work. Because an essential aspect of a quantum meruit claim is an expectation of payment, a plaintiff may not bring a quantum meruit claim when he is already paid by an employment contract.  See McNamara v. EnCana Energy Servs., Inc., No. H-03-226, 2005 WL 2106088 (S.D. Tex. Aug. 30 2005)(citing City of Ingleside v. Stewart, 554 S.W.2d 939, 943 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.) (holding that plaintiffs could not recover under quantum meruit because they were compensated by their employment contracts).  Plaintiff has failed to raise a fact issue of quantum

25

meruit with respect to his expectation of a bonus based on his "working very hard,"[90] and "with a smile on his face"[91] in 2012. The court accordingly **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED** as to Plaintiff's quantum meruit claim.

## C.  **Promissory Estoppel**

Finally, Defendant moves for summary judgment on Plaintiff's promissory estoppel claim.  A promissory estoppel claim may be asserted as an affirmative grounds for relief in Texas in limited circumstances.  See Adams v. Petrade Int'l, Inc., 754 S.W.2d 696, 707 (Tex. App.—Houston [1st Dist.] 1988, writ denied).  The elements of a promissory estoppel claim are: (1) a promise; (2) foreseeable reliance; and (3) substantial reliance to the promisee's detriment. See Beverick v. Koch Power, Inc., 186 S.W.3d 145, 152 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).  However, if a valid contract exists between the parties that includes the alleged promise, a plaintiff may not recover under promissory estoppel. Harris Constr. Co., LTD. v. GGP-Bridgeland, L.P., 698 F. Supp. 2d 723, 726 (S.D. Tex. 2010).  If a valid contract exists, a plaintiff must seek damages under the contract.  Id.

Here, Plaintiff's promissory estoppel claim is predicated on statements made by Posoli that Plaintiff would receive a bonus of

___

[90]    Doc. 36, Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 137.

[91]    Id.

approximately $150,000 in 2012. However, as explained above, Plaintiff's annual bonus was included as part of Plaintiff's employment contract. Thus, to the extent that Posoli made a promise, it was regarding a promise already included under contract. See Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist., 786 F.3d 400, 414 (5th Cir. 2015). In addition, a promise by a corporate defendant requires authorization from an individual with authority to make such a promise; Plaintiff has not produced any evidence explaining that Posoli was authorized to make such a promise to pay Plaintiff a bonus. See Beverick, 186 S.W.3d at 152 (holding that a plaintiff could not prevail on a promissory estoppel claim without evidence that a person with authority promised him additional payment).

Further, even if Plaintiff could show that this promise was not included in his employment contract and that Posoli was authorized to make such a promise, he has not shown any reliance to his detriment. Plaintiff states that he relied on Posoli's statement by continuing to work hard until his termination. Plaintiff has failed to show reliance damages, which requires expenditures made in preparation or in performance or loss that the party would have suffered if the contract had been performed. See MetroplexCore, 743 F.3d at 977-78 (holding that promissory estoppel limits a plaintiff to tangible reliance damages).

The court accordingly **RECOMMENDS** that Defendant's motion be

27

**GRANTED** as to Plaintiff's promissory estoppel claim.

### IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections to the recommendation pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.   Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this ___/___ day of March, 2016.

Nancy K. Johnson
United States Magistrate Judge

28